## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

RICHARD SIMMON-ROMÁN, el al.,
Plaintiffs,

v.

ROSA ILEANA CRUZ-BURGOS, et al.,
Defendants.

Civil No. 21-1038 (GLS)

## OPINION AND ORDER

Before the Court is Dr. Rosa Ileana Cruz Burgos' ("Cruz Burgos" or "Defendant") motion to dismiss Plaintiff Sigfredo Santana's ("Santana") breach of contract claim for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).[1] Docket No. 154. Richard Simmon ("Simmon") and Santana (collectively, "Plaintiffs") opposed. Docket No. 164. Defendant replied. Docket No. 167. For the reasons below, Defendant's motion to dismiss at Docket No. 154 is **DENIED**.

### I.       Factual Background

Plaintiffs are married and reside in New Jersey. Docket Nos. 1; 80. In early 2015, Simmon met with Defendant, a physician specializing in obstetrics and gynecology, seeking guidance on fertilization procedures that would help Plaintiffs expand their family and have a child. Docket Nos. 1 at ¶ 11; 80. Simmon was interested in obtaining donated eggs that could be fertilized with his sperm and implanted on a surrogate mother. Docket No. 1 at ¶ 12. On April 10, 2015, Simmon signed a "Consent for In Vitro Fertilization" agreement (the "Agreement"), which Santana signed as "witness". Docket Nos. 53-3; 80. The in vitro procedure was unsuccessful. Docket Nos. 1 at ¶ 23; 80 at p. 3. Plaintiffs sought a second medical opinion and ultimately took the remaining frozen

---

[1]       Defendant's motion to dismiss was unapologetically filed at the eve of trial, eighteen (18) months past the dispositive motions' deadline set by the Court at Docket No. 36. The Court will nonetheless reluctantly entertain Defendant's untimely request.

embryos to Dr. Pedro Beauchamp. Docket No. 80 at p. 4. In preparation for the procedure, Dr. Beauchamp opened the container which was supposed to contain the frozen embryos but found none. Id. This suit followed.

## II.      Standard of Review

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) the Court's focus is on the allegations of the complaint. Litton Indus., Inc. v. Colon, 587 F. 2d 70, 74 (1st Cir. 1978). The Court must accept the well-pleaded facts as true. Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009). The alleged facts must be enough to state a claim for relief that is plausible; factual allegations must be enough to raise a right to relief above the speculative level. Id. at 677; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007). "[W]hen the facts alleged, if proven, will not justify recovery […] an order of dismissal under Rule 12(b)(6) may stand." Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996). To survive a motion to dismiss, a plaintiff must provide "more than labels and conclusions" "a formulaic recitation of the elements of a cause of action will not do […]". Bell Atl. Corp. v. Twombly, 550 U.S. at 555. The Court may consider matters outside the pleadings, such as documents that are central to plaintiff's claims, documents sufficiently referred to in the complaint, documents the authenticity of which are not disputed, and official public records. Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013).

## III.      Discussion

Defendant moves the Court to dismiss Santana's breach of contract claim because he is not a signatory to the Agreement on which the breach of contract claim stands. Docket No. 154 at p. 2. Under the Puerto Rico Civil Code,[2] an enforceable contract exists when a plaintiff establishes (1) the contracting parties' consent; (2) a definite object of the contract; and (3) the parties' cause for the obligation. P.R. Laws Ann. tit. 31, § 3391. Once the existence of a contract is established, the contract will only be valid between the parties who executed it and their heirs. P.R. Laws Ann. tit. 31, § 3374. See also Feliciano-Muñoz v. Rebarber-Ocasio, 2021 WL 3887680, at * 2 (D.P.R. Mar. 23, 2021) ("[I]n Puerto Rico, contracts are generally only valid between the parties who execute them, and actions arising out of a contract can be prosecuted only by on contracting party against the other.") (quoting Dantlzer, Inc. v. Lamas-Besos, 2010 WL 2572618, at *3 (D.P.R. June

---

[2]          The 2020 Civil Code went into effect November 28, 2020. See 2020 P.R. Laws Act 55 (June 1, 2020). We apply the law as it was at the relevant time.

22, 2010)). Moreover, "if the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties", the Court holds the parties to the literal sense of the terms. Id. § 3471; González v. John Hancock Mut. Life Ins. Co., 927 F.2d 659, 660 (1st Cir. 1991) (internal quotations omitted). In other words, "courts are barred from considering extrinsic evidence in a written contract where the terms are clear and unambiguous." Triangle Cayman Asset Co.v. LG and AC, Corp., 52 F.4th 24, 32 (1st Cir. 2022). Notwithstanding the foregoing, when there is evidence to establish that the intention of the contracting parties may be contrary to the terms of the contract, courts must inquire as to the parties' real intentions. Marcial v. Tomé, 144 P.R. Dec. 522, 535-36, 1997 WL 871183 (1997); see also P.R. Laws Ann. tit. 31, § 3471 ("if the words should appear contrary to the evident intention of the contracting parties, the intention [   ] prevail[s]"). After all, "determining the real and common intent of the contracting parties is the fundamental criteria for contract interpretation under Puerto Rico law." Puerto Rico Telephone Co., Inc. v. SprintCom, Inc., 662 F.3d 74, 91 (1st Cir. 2011).

Defendant avers that Santana signed the Agreement as a witness and, therefore, is not a contracting party who can seek redress from Defendant. Docket No. 154 at p. 4. And that Plaintiffs so admitted at the summary judgment stage. Id. But Plaintiffs' admission was not that Santana was not a party to the Agreement. The admitted fact was that Santana signed the Agreement as a witness. Not more. And that holds true today. Nobody is questioning whether Santana's signature of the Agreement was labeled that of a "witness." Rather, the issue is what that means for purposes of this Agreement and whether it can be said that having been labeled a "witness" means that Santana was not a party or creditor under the contract. Indeed, contrary to her argument now, **Defendant stipulated in the Joint Proposed Pretrial Report at Docket No. 98 that "[o]n or about April 10, 2015, Dr. Cruz, GREFI, Mr. Simmon, and Mr. Santana entered into a medical services contract titled 'Consent for In Vitro Fertilization**.'" (Emphasis added). See Docket No. 98 at p. 15. Nonetheless, the Court considers Defendant's inconsistent claim and ultimately rejects it.

The Agreement is a pre-drafted contract prepared by Defendant. Docket No. 53-3. The Agreement, as it states in the first page, contemplates an opposite-sex "married couple" ("husband" and "wife") with the legal capacity to execute the Agreement. Docket No. 53-3. It also states that the "best solution" for the "married couple" to conceive is through in vitro fertilization. Id. at p. 1. In relevant part, the Agreement provides that the "married couple" consented to having a female

donor provide the egg cells that "result[ed] in the pre-embryo that [was] transferred to the Wife." Id. at p. 6. Below that clause, there is a handwritten note that states "wife=surrogate." Id. In the last page of the Agreement, there is a space for "husband" and "wife" to sign, as well as for a witness. Id. at p. 10. The space for the "wife" to sign was left blank even though there is no dispute that Simmon and Santana are married and that the only potential "married couple" under the Agreement were Simmon and Santana. As alleged by Plaintiffs, because Santana was not the "wife," he signed in the space provided for the "witness." See Docket No. 4 at ¶ 13-15.

The language in the Agreement is confusing as it relates to Simmon and Santana. It does not contemplate that a same sex marriage is seeking fertility treatments via in vitro fertilization and surrogacy. The use of the terms "husband" and "wife" throughout the Agreement to describe the "married couple" subject of the Agreement was misplaced. The Agreement does not consider the surrogate except to label her as "wife."  See Docket No. 53-3 at p. 6. Given that neither Simmon and Santana can "undergo several tests to determine if she is a candidate for In-Vitro Fertilization," or provide egg cells, Plaintiffs chose an egg donor and a surrogate to carry the embryos. Docket No.53-3 at p. 6. But the surrogate is evidently not the "wife" and had no interest in the services to be provided under the Agreement.

This is a case where the literal terms of the Agreement appear contrary to the intention of the parties. A review of the entire document reveals that a "married couple," composed of Simmon and Santana, sought in vitro fertilization. Clearly, the surrogate is not Simmon's wife. And, pursuant to the Agreement, this is not the case where Simmon sought services alone. It is then evident that the services were sought by both Simmon and Santana. See Docket No. 1 at ¶ 11. Therefore, regardless of whether Santana's signature was labeled that of a "witness," there is clear indication that the intent was that the in vitro fertilization services were to be rendered to the "married couple"— Simmon and Santana. The evident intention of the parties to the Agreement prevails. See P.R. Laws Ann. tit. 31, § 3471 ("if the words should appear contrary to the evident intention of the contracting parties, the intention [  ] prevail[s]"); Marcial v. Tomé, 144 P.R. Dec. 522, 535-36, 1997 WL 871183 (1997).

Further, even if the intention of the parties was not clear, when stipulations in a contract are obscure, the Court must construe them against the party who drafted the contract. See P.R. Laws Ann. tit, 31 § 3478 ("The interpretation of obscure stipulations of a contract must not favor

the party occasioning the obscurity."). The Puerto Rico Supreme Court has held that whenever ambiguities arise in contracts of adhesion, these should be interpreted against the party who drafted the contract. See Torres v. Hacienda Madrigal, Inc., 2016 WL 160702 at *2 (D.P.R. Jan. 13, 2016); González v. Coop. Seguros de Vida de P.R., 117 D.P.R. 659 (1986). There is no dispute that the Agreement was a pre-drafted contract prepared by Defendant. As such, any ambiguity created by her when she failed to take into account that the services were sought by a same sex married couple cannot now be used in her favor.

In any event, even assuming arguendo that Santana was not a signatory to the Agreement, Santana would still be a beneficiary of the Agreement and could claim damages for any breach. Puerto Rico law recognizes a cause of action in favor of a third-party beneficiary to a contract. P.R. Laws Ann. tit, 31 § 3374; Feliciano-Muñoz, 2021 WL 3887680, at * 2. "A party who benefits from the contract may be afforded rights under it as a third-party beneficiary, even though it was not expressly named and did not participate in the execution of the contract, if the benefits afforded to that party can be identified from … the contract." Id. (quoting CPA Group Int'l Inc. v. American Intern. Ins. Co. of Puerto Rico, 2002 WL 31944044, at *11 (D.P.R. May 23, 2002)). The provisions of the Agreement are clearly for the benefit of the "married couple": the possibility of having a child via in vitro fertilization and surrogacy. Accordingly, even if Santana was deemed not to be a party to the Agreement, he may still recover damages as a third-party beneficiary. See Feliciano-Muñoz, 2021 WL 3887680, at *3. Santana's signature as "witness" is a clear indication that he accepted any stipulation in his favor. See P.R. Laws Ann. tit, 31 § 3374 ("Should the contract contain any stipulation in favor of a third person, he may demand its fulfillment, provided he has given notice of his acceptance to the person bound before it may have been revoked.").

## IV.    Conclusion

For the reasons discussed, Defendant's Motion to Dismiss at Docket No. 154 is **DENIED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 6th day of December 2023.

s/Giselle López-Soler<br>
GISELLE LÓPEZ-SOLER<br>
United States Magistrate Judge